UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONIQUE GARAVITO,

        Plaintiff,

vs.                                              Case No. 8:08-CV-926-T-27TGW

CITY OF TAMPA,

        Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 19), to which Plaintiff has responded in opposition (Dkt. 32). Upon consideration, Defendant's motion is GRANTED.

### *Background*

In the instant action, Plaintiff Monique Garavito alleges that she was terminated from employment as a police officer with Defendant City of Tampa due to her diagnosed epilepsy and that Defendant failed to accommodate her condition, in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq.*, and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 760.01 *et seq*. The relevant facts follow.

On February 1, 2006, Plaintiff was accepted into Defendant's Police Scholarship Program, which provided tuition for the Police Academy and a monthly stipend. (Pl. Dep., Exhs. 1, 4). As a scholarship recipient, Plaintiff was required to undergo a physical examination at Tampa Occupational Healthservices, which she completed on February 10, 2006. (Pl. Dep., Exh. 4; Adan

1

Dep. at 14). Plaintiff provided the examiner with a letter from her long-time neurologist, Dr. Sergio Jacinto, dated February 9, 2006, in which he noted that Plaintiff had a seizure in October 2003, when she did not receive medication for two or three days, and had another in August 2002. (Pl. Aff. at 1, Exh. A). Dr. Jacinto also noted that Plaintiff had no side effects from her medication and that her last EEG was interpreted as normal. (*Id.*) The examiner found that Plaintiff was "medically fit to perform this specific job without restrictions and can do so without posing a direct threat to the health or safety of self or others." (Pl. Dep., Exh. 4).

Plaintiff was also required to pass an examination administered by a medical board designated by the Pension Fund for Firefighters and Police Officers of the City of Tampa. (Lang Aff. ¶ 4; Lang Dep. at 23). In her Medical History Statement, dated September 11, 2006, Plaintiff indicated that she had epilepsy and seizures or convulsions. (Pl. Dep., Exh. 5 at 2). The examining physician, Dr. Bruce Bohnker, with Comprehensive Occupational Medicine for Business & Industry ("COMBI"), told Plaintiff that he would have to do further research and that she should provide a letter from her neurologist, which Plaintiff testified she did. (Pl. Dep. at 28-29).

After successfully completing the Police Academy, Plaintiff was sworn in as a police officer on or about September 18, 2006. (Pl. Dep. at 25, 27). She was placed in "holdover," a month of training in which new police officers learn agency policy and procedures. (Pl. Dep. at 31; Adan Dep. at 7-8). However, by letter dated September 25, 2006, Dr. Bohnker concluded:

> Unfortunately, you were noted to have a history of primary generalized seizure disorder on medication which does not meet the medical standard for employment with the Tampa Police Department. This assessment was reached after review of a letter from Dr. Sergio J. Jacinto of 02/09/2006 as well as the EEG results of 2/16/2004. The Medical Screening Manual for California Law Enforcement (2004 edition) was reviewed as well. (Pl. Aff., Exh. C).

2

The parties do not dispute that Plaintiff was separated from employment as a result of Dr. Bohnker's determination. (Rainsberger Dep. at 17).[1]

Sergeant Anne Marie DeMesa, a personnel and training supervisor, testified that "[w]e tried everything we could to convince COMBI to reconsider based on the knowledge we had, but we are not doctors so we could only do so much." (DeMesa Dep. at 12). Although DeMesa testified that they pursued getting a second opinion, Dr. Bohnker was the only person who performed the physicals at COMBI. (DeMesa Dep. at 12-13). Lieutenant Luis Adan, who supervised the Police Department's operational unit during Plaintiff's tenure, testified that they asked Dr. Bohnker whether accommodations could be made for Plaintiff, but he determined there were none. (Adan Dep. at 23).

On May 10, 2007, the Equal Employment Opportunity Commission issued a finding that there was a reason to believe violations of the ADA had occurred based on Plaintiff's termination. (Pl. Aff., Exh. E). On May 18, 2007, Defendant's attorney requested Dr. Bohnker reconsider his opinion. (Rainsberger Dep. at 6, Exh. 1). Dr. Bohnker issued a more detailed four-page opinion, ultimately concluding that Plaintiff's history of seizures and the possible side effects of her anti-seizure medication:

> limits her ability to perform the essential functions of a police officer with the Tampa Police Department. Accommodation could be considered such as limiting high speed vehicle operations, avoiding weapon use and minimizing shift changes. However these would seem to be essential to police officer functions and difficult to modify while maintaining organizational needs. (Rainsberger Dep., Exh. 1 at 4).

---

[1] Defendant characterizes Plaintiff's separation as a revocation of an offer of employment. (Dkt. 19 at 6). Sergeant Anne Marie DeMesa testified that Plaintiff "would have been hired had she had passed that physical." (DeMesa Dep. at 14). On the other hand, Plaintiff contends she was terminated, as she had been sworn in and issued a uniform and badge. (Pl. Aff. at 1; Pl. Dep. at 30-31)). Lieutenant Luis Adan testified that once employees start the "holdover" process, "they're on payroll." (Adan Dep. at 18). He also testified that because Dr. Bohnker would not provide medical clearance "we had to let Ms. Garavito go." (Adan Dep. at 21).

Dr. Bohnker reaffirmed his September 25, 2006 opinion that Plaintiff did not meet standards for employment with the Tampa Police Department. (*Id.*)

Plaintiff disputes Defendant's assessment of her condition. Plaintiff avers that Dr. Bohnker made no detailed or individualized inquiry as to how her seizures affected her, instead stating during her examination that "no one with a history of epilepsy should be a police officer." (Pl. Aff. at 2). Specifically, Plaintiff argues that she has never experienced a grand mal seizure, and the few "absence seizures" she has had merely cause her to "blank out for a second or two." (Pl. Aff. at 1). She asserts that Dr. Jacinto's October 3, 2006 report noted that she had been through stressful situations during her training and had been tasered, without experiencing a seizure. (Pl. Dep., Exh. 6). Further, Dr. Jacinto noted that Plaintiff did not have a photoparoxysmal response or photosensitive epilepsy, which would cause a seizure in response to sirens or lights. (*Id.*)

In the instant motion for summary judgment, Defendant argues that Plaintiff does not have a "disability" within the meaning of the ADA, was not qualified to perform the job of police officer, and was not denied a reasonable accommodation. In response, Plaintiff maintains that Defendant failed to make the requisite individualized inquiry in assessing her disability and regarded her as disabled, *per se*, in violation of the ADA. As set forth, the Court finds that Defendant's motion is properly granted, as Plaintiff has not demonstrated that she has a "disability."

### *Standard*

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the

applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24. Plaintiff's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

### *Discussion*

Plaintiff brings her claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 *et seq.*, and the Florida Civil Rights Act of 1992 (FCRA), Fla. Stat. §§ 760.01 *et seq.*[2] The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or

---

[2] Because federal case law interpreting the ADA is applicable to claims arising under the FCRA, Plaintiff's causes of action are analyzed simultaneously. *Reis v. Univ. City Develop. Partners, Ltd.*, 442 F. Supp. 2d 1238, 1243 (M.D. Fla. 2006) (citing *Wimberly v. Sec. Tech. Group, Inc.*, 866 So.2d 146, 147 (Fla. 4th DCA 2004)).

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). In the instant action, Plaintiff brings both disparate treatment and failure to accommodate claims.

*1. Burdens of proof*

In the absence of direct or statistical evidence of discrimination, neither of which Plaintiff argues, Plaintiff's claims are evaluated based on circumstantial evidence under the traditional *McDonnell Douglas* burden-shifting framework. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001); *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000). To establish a prima facie case of employment discrimination under the ADA a plaintiff must demonstrate that: (1) she has a disability; (2) she is a "qualified individual;" and (3) the defendant unlawfully discriminated against her because of the disability. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225-26 (11th Cir. 2005). The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. *Raytheon Co.*, 540 U.S. at 49 n.3. If the employer meets this burden of production, the employee may still prove disparate treatment, for instance, by demonstrating the employer's reason is pretextual. *Id.*

In a claim for failure to make reasonable accommodations, the traditional *McDonnell Douglas* burden-shifting is modified. *Fenney v. Dakota, Minn. & E. R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003). In addition to setting forth the prima facie case, the employee must identify a reasonable accommodation that would allow her to perform the job. *Terrell v. USAir*, 132 F.3d 621, 624 (11th

Cir. 1998). Once the employee has met this burden, the employer may rebut the claim by presenting evidence that the requested accommodation imposes an undue hardship on the employer. *Id.*

2.      *Prima Facie Case*

In the instant motion, Defendant challenges Plaintiff's ability to prove each element of her prima facie case. Because the Court finds that Plaintiff has not demonstrated that she has a "disability" within the meaning of the ADA under the first element, the remaining elements of her prima facie case are not addressed.

A determination of whether a person is disabled is an individualized inquiry performed on a case-by-case basis and "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999); 29 CFR pt. 1630, App. 1630.2(j).[3] An individual is "disabled" within the meaning of the ADA when she possesses any one of the following: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). A "major life activity" includes "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 CFR § 1630.2(I); *D'Angelo*, 422 F.3d at 1226-27.

Defendant first argues that Plaintiff is not disabled under the first prong, as she testified that "epilepsy has never interfered with anything in my life" and had never affected any activity in her life. (Pl. Dep. at 39-40). In response to Defendant's motion, Plaintiff has not identified any major

---

[3] Although the EEOC's administrative interpretations are not binding, they "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986).

life activity that she contends is limited, nor does she even argue that she falls under the first prong. Accordingly, the Court finds that Plaintiff has failed to demonstrate that she has a physical or mental impairment that substantially limits a major life activity. *See also Sicilia v. United Parcel Serv., Inc.*, 279 F. App'x 936, 938 (11th Cir. 2008) (holding that plaintiff's epilepsy, by his own admission, did not substantially limit a major life activity).

Plaintiff instead argues that she falls under the third prong because Defendant regarded her as having a physical impairment that substantially limited her ability to work. A plaintiff may be "regarded as" disabled in two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton.*, 527 U.S. at 489;[4] *see also D'Angelo*, 422 F.3d at 1228. With respect to the major life activity of working, Plaintiff must demonstrate that she is "regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 523 (1999). Specifically, Plaintiff must demonstrate that she was regarded as unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[5] *Carruthers v. BSA Advertising*, 357 F.3d 1213, 1216

---

[4] *Sutton v. United Air Lines, Inc.* was superseded by the Public Law 110-325, the ADA Amendments Act of 2008. Given the absence of congressional intent to give the amendments retroactive effect, courts have consistently held the amendments are not retroactive. *See Fikes v. Wal-Mart, Inc.*, Case No. 08-12773, 2009 WL 961774, at *2 (11th Cir. Apr. 21, 2009); *Milholland v. Sumner County Bd. of Educ.*, Case No. 08-5568, --- F.3d ---, 2009 WL 1884376, 3 (6th Cir. July 2, 2009); *EEOC v. Agro Distr. LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009); *Kiesewetter v. Caterpillar, Inc.*, 295 F. App'x 850, 851 (7th Cir. 2008). Accordingly, the Court applies the prior version of the statute and case law decided thereunder.

[5] A "class of jobs" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." *Witter v. Delta Air Lines, Inc.*,138 F.3d 1366, 1370 (11th Cir. 1998) (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(B)).

(11th Cir. 2004) (adopting 29 C.F.R. § 1630.2(j)(3)(I)); *Murphy*, 527 U.S. at 524-25. (plaintiff must demonstrate that he was "regarded as unable to perform a class of jobs utilizing [her] skills").

Plaintiff has simply introduced no evidence that Defendant regarded her as unable to perform a class of jobs or a broad range of jobs in various classes. Rather, all evidence indicates that Defendant regarded Plaintiff only as precluded from the job of police officer.[6] This is insufficient to demonstrate that Defendant regarded Plaintiff as substantially limited in the major life activity of working. The Eleventh Circuit has expressly held that "'police officer' is too narrow a range of jobs to constitute a 'class of jobs.'" *See Rossbach v. City of Miami*, 371 F.3d 1354, (11th Cir. 2004) (citing *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1370 (11th Cir. 1998)).[7] Significantly, Plaintiff identifies no other job she was regarded as precluded from performing.

In this respect, Plaintiff's authority is readily distinguishable. In *McKenzie v. Dovala*, the Tenth Circuit held that the defendant sheriff's office regarded the plaintiff, a former deputy sheriff, as disabled where it attempted to preclude her from working in a class of jobs, including any job in the civil, administrative, records, and jail divisions and as a peace officer, such as campus police

---

A "broad range of jobs in various classes" is defined as "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment." *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(ii)(C)).

[6] Although Plaintiff argues in her response in opposition that Defendant "likewise precluded her from any other police officer position *or any class of jobs comprising law enforcement*" (Dkt. 33 at 13, emphasis added), Plaintiff cites no record evidence supporting the contention that she was precluded from any job other than the position of police officer.

[7] *See also, e.g., Arnold v. City of Appleton*, 97 F. Supp. 2d 937, 948-49 (E.D. Wisc. 2000) (defendant regarded plaintiff only as precluded from performing the job of firefighter due to epilepsy); *Lomastro v. Caddo Parrish Sheriff*, Case No. civ-05-320, 2006 WL 1805875, at *5 (W.D. La. June 29, 2006) (defendant regarded plaintiff only as precluded from performing the job of corrections deputy due to history of seizures); *Prince v. Jefferson County Police Dep't*, Case No. 3:99-cv-161, 2000 WL 33975209, at *2 (W.D. Ky. May 25, 2000) (defendant regarded plaintiff only as precluded from performing the job of police officer due to her epilepsy).

officer, investigator for hunting and fishing outfitters, livestock inspector, and park ranger. *McKenzie v. Dovala*, 242 F.3d 967, 971-72 (10th Cir. 2001). Plaintiff has made no similar showing here.

Plaintiff's reliance on *Duran v. City of Tampa* is also misplaced. In that case, the district court held that the plaintiff, a police officer candidate with epilepsy, had demonstrated a substantial likelihood of success on his Rehabilitation Act "regarded as" claim because the City of Tampa -- the same Defendant here -- excluded all individuals with a history of epilepsy from employment as a police officer without a medical examination or other process. *Duran v. City of Tampa*, 430 F. Supp. 75, 77-78 (M.D. Fla. 1977). As an initial matter, the Court notes that *Duran* included no analysis on the question of whether the plaintiff was regarded as substantially limited in the major life activity of working, which, as set forth above, Plaintiff has failed to demonstrate. *Id.* at 78. More significantly, Plaintiff has not demonstrated that Defendant has retained a *per se* policy of exclusion of individuals with epilepsy.

It is well-established that "the determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." *Sutton*, 527 U.S. at 483; 29 CFR pt. 1630, App.§ 1630.2(j). In contrast to *Duran*, however, Plaintiff was examined by a physician prior to her alleged termination. Dr. Bohnker considered Plaintiff's medical records, which revealed her history of seizures and medication use.[8] (Pl. Aff., Exhs. A, C). Specifically, Dr. Bohnker was informed that Plaintiff had a seizure less than three years earlier, in October 2003, another in August 2002, and was still on medication. During her examination, Dr. Bohnker requested a letter from Plaintiff's

---

[8] In *Duran*, the plaintiff had been seizure free since 1959 and off medication since 1966 when he was rejected from employment in 1975. *Duran*, 430 F. Supp. at 76.

neurologist and stated that he needed to do further research. Plaintiff testified that "I know it took him a while to make up his decision because I was going back and forth with him. My neurologist was going back and forth with him." (Pl. Dep. at 28). Although Plaintiff now avers that Dr. Bohnker did not make an "individual assessment" and told her that "no one with a history of epilepsy should be a police officer," it is undisputed that he did make the requisite "individualized inquiry" into her condition.[9] *Sutton*, 527 U.S. at 483.

Plaintiff has identified no other major life activity in which Defendant purportedly regarded Plaintiff as substantially limited.[10] Based on the foregoing, Plaintiff has failed to come forward with evidence sufficient to demonstrate that she has a "disability" within the meaning of the ADA and FCRA. *See Celotex*, 477 U.S. at 323-24. Accordingly, Defendant's motion for summary judgment is granted on all claims.

## Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Dkt. 19) is **GRANTED**. The Clerk is directed to **ENTER** judgment in favor of Defendant and **CLOSE** this case.

**DONE AND ORDERED** in chambers this 13th day of July, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[9] To the extent Plaintiff argues that Dr. Bohnker violated the protocol in the California Manual for Law Enforcement by failing to make an individualized assessment, this argument fails for the reasons stated.
Although Plaintiff does not argue that Dr. Bohnker's statement that "no one with a history of epilepsy should be a police officer" constitutes direct evidence of discrimination, in an abundance of caution, the Court notes that the statement would not constitute direct evidence of discrimination. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption").

[10] Plaintiff's reliance on *Doane v. City of Omaha*, 115 F.3d 624, 628 (8th Cir. 1997) is misplaced, as it dealt with the major life activity of seeing.